## Village of Lockport v. William S. Shields.

1. CONTRACTS—*Repudiation and Abandonment.*—Where one party by his acts repudiates his contract, and makes its performance impossible by the other party, such party will have the right to treat it as at an end, and sue for and recover the profits he would have realized if he had not been prevented from performing.

Error to the Circuit Court of Will County: the Hon. DORRANCE DIBELL, Judge, presiding. Heard in this court at the October term, 1899. Affirmed. Opinion filed February 1, 1900.

JOHN W. D'ARCY, attorney for plaintiff in error.

HIGGINS & WALTER and J. W. DOWNEY, attorneys for defendant in error.

MR. PRESIDING JUSTICE CRABTREE delivered the opinion of the court.

This was an action of assumpsit, by defendant in error against plaintiff in error, to recover a balance claimed to be due him for services as a civil engineer, in the matter of the proposed construction of a system of water-works in the village of Lockport. The declaration contained special counts upon an alleged contract, and also the common counts, to which the defendant pleaded the general issue, a plea of payment, and a third plea traversing the allegations of the special counts in the declaration. There was a trial by jury resulting in a verdict for plaintiff for the sum of $1,763.94, upon which the court entered judgment after overruling a motion for new trial. The village brings the cause to this court for review, and assigns for error that the court admitted improper evidence for the plaintiff, refused proper evidence offered by the defendant, gave improper instructions for plaintiff and refused proper instructions asked by defendant; that the court erred in refusing the motion for a new trial and entering judgment on the verdict.

It appears from the evidence that in the summer of 1895 plaintiff in error became desirous of constructing a system of water-works in the village, and on August 12th of that year employed defendant in error to prepare plans and specifications for a pumping station, well, machinery and mains for the conduct of the water to the various parts of the village.    That on August 30, 1895, the village board adopted an ordinance known as " 107," providing for the issuing of bonds to the amount of $10,700, with which to construct such water-works.   That the plans prepared by defendant in error, with some modifications as to size and capacity of machinery, were adopted by the village board, and he received $400 in payment for such plans, specifications and a map of the village, in full for the services performed by him up to and including the evening of September 10, 1895.   On that evening he was employed by the board " to superintend the construction of the water-works system for five per cent of the cost of same."

The pumping station was built, the well drilled and reservoir constructed at the location called for in the plans of defendant in error and connections made therewith.   After the reservoir was supposed to be completed it was found to leak, and defendant in error directed certain changes to be made therein so as to make it water-tight, according to the specifications and contract therefor, but it is complained by plaintiff in error that after the extra work was performed on the reservoir it still continued to leak, whereby it is insisted the reservoir became worthless and of no value to plaintiff in error, and it claims the right to recoup the damages arising therefrom against any demand which defendant in error may have on account of his contract and services.

The contract for the water-mains was awarded to Gaffney & Long, of Chicago, the work to be performed under the supervision of defendant in error, and the contract expressly provided that he should be the judge as to the manner of doing the work and the rate of progress made thereunder, and that the work should be commenced when the assessment roll was confirmed, and should be fully completed on

or before May 1, 1896. The contractors expressly agreed to assume all risk with regard to the special assessment, and the village was to use due diligence in obtaining confirmation of the assessment. The assessment for the improvement was confirmed in the County Court of Will County, on March 3, 1896, and the village clerk at once notified Gaffney & Long of that fact and to proceed with their work under the contract.

But on March 4th exceptions to this judgment of confirmation were taken by a large number of objectors, and an appeal prayed to the Supreme Court, which was allowed upon condition that the parties appealing filed a bond and presented a bill of exceptions within sixty days from that date.

It further appears that no work was ever done by Gaffney & Long under their contract for laying the mains, and a change of village administration having taken place on May 1st, the village board, on May 4th, passed an ordinance directing the village attorney to release the assessment of record against the lands affected thereby, and the scheme of laying the mains and completing the water-works system seems to have been abandoned, and no further efforts were made to carry out the original plan in relation thereto.

The contracts let for the construction of the work, added to about $2,400 of extras, amounted to $47,278.99, as nearly as we can ascertain the same from the record, and upon this amount defendant in error claimed a commission of five per cent under his contract with the village board, amounting to the sum of $2,363.90, of which he had been paid $600, leaving due him, as he claimed, $1,762.94.

It is not disputed that defendant in error was regularly employed by the village board of plaintiff in error, to superintend the construction of the water-works system, and that his compensation therefor was to be five per cent upon the cost of the same, and that he entered upon the discharge of his duties under such employment by preparing the necessary plans, ordinances, advertisements for bids, contracts and specifications, maps, plats and blue prints, showing

the proposed water-works system, distribution of mains, depth and size of pipes, location of hydrants, service pipes, and cocks; and, in short, making a complete plan of the proposed water-works, including all the necessary surveys therefor.

It is insisted by counsel for plaintiff in error that defendant in error was not entitled to commissions on the amount of the contract let to Gaffney & Long, because the work contracted for was never performed. This would be true provided defendant in error was responsible for the failure of Gaffney & Long to complete their contract. But it is to be observed that the Gaffney & Long contract contained a provision that payment thereunder should be made solely out of the special assessment to be levied under ordinance 107, and a further provision that the contractors assumed all risk in prosecuting the work before the assessment was confirmed. As we have already seen, the judgment of confirmation was entered March 3d, but on the following day, March 4th, an appeal to the Supreme Court was granted and sixty days allowed in which to file bond and bill of exceptions. This time would expire on May 4th, and on that day the village board ordered the assessment released of record, and thereby abandoned the further prosecution of the enterprise. The granting of the appeal amounted substantially to a suspension of the judgment of confirmation, and as payment for the work was to be made solely out of the proceeds of the assessment, it would be unreasonable to hold that Gaffney & Long should have gone on with their contract under the circumstances. After the appeal was granted they could not know that the assessment would ever be confirmed, and we fail to see from the evidence how defendant in error was responsible for the delay. He could not have compelled Gaffney & Long to proceed under their contract, nor was he to blame for not trying to do that which it was impossible for him to accomplish. By their own acts, the village authorities placed it out of the power of Gaffney & Long to obtain any pay for their work, if they had carried out their contract, and therefore they

could not be expected to perform.    As a consequence of the same acts of the village authorities, defendant in error was prevented, without his fault, from superintending that portion of the work specified in the Gaffney & Long contract, although ready and willing to do so.

We are of the opinion plaintiff in error could not thus avoid its liability to pay defendant in error the contract price agreed upon for superintending the construction of the whole work.    The case seems to fall within the principles laid down in L. S. & M. S. Ry. Co. v. Richards, 152 Ill. 59.

Plaintiff in error by its acts repudiated the contract and made it impossible of performance, and defendant had a right to treat it as at an end, and sue for the profits he would have realized if he had not been prevented from performing.

We think there was no error in the first instruction given for the plaintiff below.    It properly stated the law applicable to plaintiff's theory of the case and was warranted by the evidence.    It did not eliminate any question of fact from the consideration of the jury, as claimed by counsel for plaintiff in error.    The use of the word " total " in the instruction was not improper.    It was for the court to construe the contract, which, so far as plaintiff in error is concerned, was in writing, and found upon its own records. The employment was, " to superintend the construction of the water-works system, for five per cent of the cost of the same."    Although the word " total " is not used, we are of opinion it would add nothing to the meaning of the sentence.    Five per cent upon the cost could not well be held to mean anything else than five per cent upon the entire or total cost.

The point is made by counsel for plaintiff in error that the village of Lockport could not legally contract for the services of defendant in error at five per cent of the cost of the proposed work, when said cost exceeded $10,700, because, he claims, the evidence does not show any appropriation for a greater amount.    No question of this kind was raised in the pleadings, by motion to direct a verdict, or in any

instruction to the jury, nor do we find it was at any time made in the court below.   Not even in the motion for a new trial was any such objection made or referred to.

Without going into the merits of the proposition, we think it sufficient to hold that the objection comes too late, and can not be raised for the first time in this court.

It is also insisted by plaintiff in error that defendant in error was not entitled to recover the unpaid balance of $270 commissions on the cost of that portion of the water-works system actually constructed, because of the leakage of the reservoir; it being argued that he drew the plans, selected the location and superintended the construction, and was therefore responsible for the failure of the reservoir to answer the purpose intended, whereby it is claimed $2,400 of the village money was expended for which it received no benefit.   As we have already said, plaintiff in error sought on the trial to recoup damages on account of this alleged failure of the reservoir, as against the claim of defendant in error.

Much evidence was taken in regard to this matter, which we do not deem it necessary to discuss in detail.   All of it went to the jury and was no doubt duly considered by them.   We see no reason for holding that the verdict was not warranted by the evidence.

Complaint is made of the instructions as a whole, but the only one to which specific objection is made is the first of the series, which we have already discussed.

On the whole we think the instructions were substantially free from any just criticism; that the case was fairly tried, and no good reason is perceived why the judgment should be reversed.   It will therefore be affirmed.

Mr. Justice Dibell took no part.